**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| Miguel Ramirez, | ) | CV-09-230-TUC-JCG |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| Fidelity National Title Insurance Co., | ) | |
| Defendant. | ) | |

Pending before the Court is Plaintiff's Motion for Class Certification filed May 14, 2010. (Doc. 53.) The Motion is supported by a Memorandum of Points and Authorities and Supporting Exhibits. (Docs. 55-58.) Fidelity National Title Insurance Company ("Fidelity") filed an Opposition to the Motion on June 28, 2010. (Doc. 63.) Fidelity's Opposition is supported by numerous separately-filed declarations. (Docs. 64-67, 71.) Plaintiff filed a Reply to the Opposition on July 28, 2010. (Doc. 76.) For the reasons that follow, the Court will grant the Motion for Class Certification.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff's Complaint alleges the following facts. Plaintiff is a resident of Tucson, Arizona. In June, 2005, Plaintiff executed a refinance of the existing mortgage on his home. As part of this transaction, Plaintiff was required to purchase a policy of title insurance for his new mortgage lender. The title insurance policy was purchased from Fidelity.

Fidelity is a title insurer. Pursuant to A.R.S. §§ 20-376 - 20-379, all title insurers are required to publish and adhere to a schedule of exact rates for the title policy premiums that they charge. These rates must be filed with the state insurance department of the jurisdiction

in which the title underwriter conducts business.  The rate schedules also mandate that under predetermined circumstances, customers who purchase title insurance in association with a refinance transaction are entitled to a substantially lower price than that charged for a multi-party sale ("reissue rate").  Reissue rate are lower than multi-party sale rates ("basic rate") because title companies perform less work in preparing a reissue policy, and also insure against less risk.

Plaintiff qualified for and was entitled to receive the discounted reissue rate for the premium he paid to Fidelity in connection with his June, 2005 refinance.  However, Fidelity failed to charge Plaintiff the discounted reissue rate, instead imposing a more expensive premium fee.  According to Plaintiff, Fidelity "routinely and systematically" charges its customers title insurance fees in excess of statutorily-mandated rates.  Plaintiff claims that Fidelity is engaged in a uniform and customary business practice of overcharging customers for title policies by failing to accord them discounted reissue rates and by failing to inform such customers that they qualify for such discounted rates.

On March 27, 2009, Plaintiff initiated a class action lawsuit against Fidelity in Pima County Superior Court; the action was removed to this Court on April 21, 2009.  Plaintiff's Complaint alleges two claims against Fidelity on behalf of himself and others similarly situated: (1) violation of Arizona's Consumer Protection Statute, A.R.S. § 44.1521, *et seq.*, and (2) unjust enrichment.  Fidelity moved for summary judgment; that Motion was denied on May 3, 2010.  (Doc. 52.)

On May 14, 2010, Plaintiff filed the pending Motion for Class Certification.  (Doc. 53.)  Plaintiff moves for certification of the following class:[1]

> All persons in the state of Arizona who, at any time between the year 2000 and the present ("Class Period") in connection with a residential mortgage refinancing, paid an identified title insurance premium for a Fidelity title insurance policy, the amount of which exceeded the applicable rate specified in the official rate manual on file with the Arizona Department of Insurance.

---

[1] The Court is not bound by the definition of the class provided in the complaint, *see Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993) and in the present case the Court considers whether to certify the class as identified in the Motion for Class Certification.

1        **STANDARD OF REVIEW**

2    **A.      Elements of a class certification motion**

3        Federal Rule of Civil Procedure 23 gives this Court broad discretion to determine

4    whether a class should be certified. *Dukes v. Wal-mart, Inc*., 509 F.3d 1168, 1176 (9th Cir.

5    2007).  However, the Court should certify a class only after a rigorous analysis of the Rule

6    23 requirements. *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 (9th Cir. 2005). The

7    party seeking class certification bears the burden of showing that each of Rule 23(a)'s

8    requirements and at least one of Rule 23(b)'s requirements has been met. *Dukes*, 509 F.3d at

9    1176.

10        Rule 23 has two implicit prerequisites that Plaintiff must satisfy for the Court to grant

11    certification. *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 490 (S.D. Ill. 1999).  First, in order

12    to maintain a class action, the class must be adequately defined and clearly ascertainable.

13    *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970); *see also Lozano v. AT & T*

14    *Wireless Servs., Inc*., 504 F.3d 718, 730 (9th Cir. 2007) ("The district court's failure to

15    analyze the Rule 23(a) factors in determining whether to grant class certification ... resulted

16    in its certifying a theory with no definable class.").  The class cannot be overbroad,

17    amorphous, or vague, but must be susceptible to a precise definition. *Clay*, 188 F.R.D. at 490.

18    A class must be precisely defined so the Court can determine whom will be bound by the

19    judgment. *McHan v. Grandbouche*, 99 F.R.D. 260, 265 (D. Kan. 1983).

20        Second, the named representative must be a member of the class. *Bailey v. Patterson*,

21    369 U.S. 31, 32-33 (1962). The Ninth Circuit dovetails the class membership prerequisite

22    with the typicality requirement of Rule 23(a). "Typicality requires that the named plaintiffs

23    be members of the class they represent." *Dukes*, 509 F.3d at 1184.

24        Plaintiffs must also prove that the proposed class meets the following four

25    requirements of Rule 23(a): (1) the class is so numerous that joinder of all members is

26    impracticable; (2) there are questions of law and fact common to the class; (3) the claims or

27    defenses of the representative parties are typical of the claims or defenses of the class; and

28    (4) the representative parties will fairly and adequately protect the interests of the class.

1   *Dukes*, 509 F.3d at 1176 (quoting Fed.R.Civ.P. 23(a)).

2         Finally, Plaintiffs must prove that at least one of the following Rule 23(b)

3   requirements is met: (1) the prosecution of separate actions would create a risk of: (a)

4   inconsistent or varying adjudications or (b) individual adjudications dispositive of the

5   interests of other members not a party to those adjudications; (2) the party opposing the class

6   has acted or refused to act on grounds generally applicable to the class; or (3) the questions

7   of law or fact common to the members of the class predominate over any questions affecting

8   only individual members, and a class action is superior to other available methods for the fair

9   and efficient adjudication of the controversy.  *Id*. (citing Rule 23(b)).  Pursuant to their

10  Motion, Plaintiffs seek certification of a class under Rule 23(b)(3).  (Doc. 53, pg. 13.)

11  **B.**   **Scope of the Court's inquiry**

12        Although the Supreme Court once stated that courts have no authority to conduct a

13  preliminary inquiry into the merits of a suit in order to determine whether it may be

14  maintained as a class action, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974),

15  later cases make clear that a preliminary inquiry into the merits is sometimes necessary to

16  make a meaningful determination of class certification issues. *See, e.g., Coopers & Lybrand*

17  *v. Livesay*, 437 U.S. 463, 469 (1978).  Thus, the Court is "at liberty to consider evidence

18  which goes to the requirements of Rule 23 even though the evidence may also relate to the

19  underlying merits of the case." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir.

20  1992) (citing *In re Unioil Sec. Litig.*, 107 F.R.D. 615, 618 (C.D. Cal. 1985)). At the same

21  time, the court is required to take the allegations of the plaintiff's complaint as true. *Blackie*

22  *v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir. 1975).

23                         **DISCUSSION**

24        In the present case, Fidelity challenges Plaintiff's motion for class certification on the

25  following grounds: (1) Plaintiff cannot satisfy the numerosity, commonality, typicality or

26  adequacy requirements of Rule 23(a), and (2) Plaintiff cannot satisfy Rule 23(b)(3)'s

27  predominance and superiority requirements.

28

**A.      Rule 23(a) Requirements**

   **1.      Numerosity**

      A proposed class satisfies the numerosity requirement if class members are so numerous that joinder would be impractical. Fed.R.Civ.P. 23(a)(1). Generally, 40 or more members will satisfy the numerosity requirement. *See Perez v. First American Title Ins. Co.*, 2009 WL 2486003, *2 (D.Ariz. 2009) (collecting cases). In the present case, Plaintiff argues that he can satisfy the numerosity requirement as follows: first, Plaintiff presents nine refinances (in addition to his own), originating in a variety of Arizona counties and municipalities over a three year period, in which Fidelity charged a title insurance fee in excess of the statutory maximum.[2] For each of the nine loans, Plaintiff has produced the HUD-1 Settlement Statement ("HUD-1") prepared and executed by Fidelity Insurance as part of the loan, as well as Plaintiff's calculation of the overcharge for the title insurance policy accompanying that loan. Second, Plaintiff notes that Fidelity collected over $209,609,000 in title premiums from Arizona transactions in three years during the relevant class period. Third, Plaintiff assumes that 1/3 of the premiums collected by Fidelity were related to refinances, and concludes that Fidelity collected $230,569,899 in refinance title premiums during the entire class period. Fourth, Plaintiff assumes an average refinance title premium of $1,100 (higher than the $933 average premium documented by the nine HUD-1s submitted to the Court). Fifth, dividing $230,569,899 by the average premium charge of $1,100, Plaintiff concludes that Fidelity engaged in 209,609 refinance transactions during the relevant time frame. Finally, Plaintiff assumes that Fidelity overcharged its customers for title insurance 6% of the time, and therefore arrives at a class size of 12,576.

      Plaintiff's reasoning calls for layers of unsupported speculation: *if* 1/3 of the premiums collected by Fidelity were related to refinances, and *if* the average title premium was $1,100, and *if* Fidelity erred in calculating the reissue rate 6% of the time, *then* the class

---

[2] Fidelity objects to the admissibility of five of these samples, noting that they were disclosed pursuant to a protective order in a separate lawsuit. Fidelity also claims that these five samples were obtained when Plaintiff cherry-picked files from one employee in one Fidelity office, rather than conducting a random file review.

1    size would be 12,576.  As Fidelity points out, the $209,609,000 collected in premiums
2    includes both owner's and lender's policies, not simply title insurance policies.  There is also
3    no basis to conclude that 1/3 of the premiums collected by Fidelity were premiums paid on
4    refinances.  Accordingly, the Court declines to adopt Plaintiff's calculations/estimations with
5    respect to numerosity.  However, the Court nevertheless concludes, based on the evidence
6    presented, that the numerosity prong has been met.

7            Rule 23(a)(1) does not require Plaintiff to produce evidentiary proof of the precise
8    size of the class.  In determining whether a proposed class meets the numerosity requirement,
9    "a court may accept common sense assumptions." *In re Linerboard Antitrust Litigation*, 203
10   F.R.D. 197, 205 (E.D. Pa. 2001) (citing *In re Cephalon Securities Litigation*, 1998 WL
11   470160, *2 (E.D. Pa. Aug. 12, 1998)); *see also In re Static Random Access memory (SRAM)*
12   *Antitrust Litigation*, 264 F.R.D. 603 (N.D. Cal. 2009) (where "the exact size of the class is
13   unknown, but general knowledge and common sense indicate that it is large, the numerosity
14   requirement is satisfied").  Plaintiff has demonstrated to the Court that Fidelity may have
15   miscalculated the premium rate 8% of the time: Plaintiff's counsel avows that he discovered
16   the nine sample cases (and his own) after reviewing only 125 closing files (the 10 sample
17   cases are 8% of the 125 files reviewed).  In order to reach the 40 or more members that will
18   presumptively satisfy the numerosity requirement, Plaintiff must demonstrate that Fidelity
19   engaged in at least 500 refinance transactions (8% of which is 40) between 2000 and the
20   present.  Given the $209,609,000 in title premiums from Arizona transactions collected by
21   Fidelity in three years during the relevant class period, common sense indicates that the class
22   size exceeds 40 people and that joinder would be impractical.[3]  *See Lewis v. First American*
23   *Title Ins. Co.*, 265 F.R.D. 536, 546, 561 (D. Idaho 2010) (finding numerosity prong met
24   where plaintiff produced seven HUD-1 statements that plaintiff contended demonstrated an
25   overcharge, and collecting cases which certified classes like the one proposed here based on

26

27            [3] However, as discussed in Section (B)(1), if the Court later redefined the temporal scope
     of the class to avoid application of the discovery rule to the statutes of limitation, Plaintiff would
28   then need to present evidence that Fidelity issued at least 500 refinance title insurance policies
     within the one- and three-year statutes of limitations.

similar or lesser evidentiary showings).  In addition, the Court notes that Fidelity removed this action to federal court asserting that this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d), which requires a $5,000,000 amount in controversy.  Given that the HUD-1s presented by Plaintiff support an average overcharge of $418.46, common sense indicates that the class size is substantial.

## 2.    Commonality

The commonality prong of Rule 23(a) requires only that questions of law or fact exist which are shared by members of the class.  As the Ninth Circuit has stated:

> The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3). Indeed, Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  In the present case, the class members' claims share a common issue: did each class member receive the rate to which he was entitled under Fidelity's approved rate manual?  *See Mitchell-Tracey v. United General Title Ins. Co.*, 237 F.R.D. 551, 557 (D. Md. 2006) ("The scope of the central question shared by all members of the proposed classes-whether they where eligible for and entitled to the 'reissue rate' under the Defendants' filed rates, and whether they failed to receive that rate as a result of Defendants' wrongdoing-is identical in all material respects.").  No review of individualized elements or legal theories will be necessary.  True, the damages to which each class member is entitled will vary based on the difference between the mandated rate and the title insurance charge actually billed.  However, "although variations exist as to the actual amount of the premium paid by each potential class member, these variations do not alter the fundamental nature of the claims." *Id.*  Accordingly, Plaintiff has satisfied the commonality requirement.

## 3.    Typicality

The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class.  *See Hanon*, 976 F.2d at 508 (citation omitted).  The test of typicality "is whether other members have the same or similar injury,

7

1    whether the action is based on conduct which is not unique to the named plaintiffs, and

2    whether other class members have been injured by the same course of conduct." *Id.* (citing

3    *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985).

4           Fidelity presents only a cursory argument against Plaintiff's typicality, claiming that

5    Plaintiff's claim will involve unique defenses related to aggregated fees.  Although class

6    certification is inappropriate where a putative class representative is subject to unique

7    defenses which threaten to become the focus of the litigation, *Hanon*, 976 F.2d at 508, that

8    rule has no application here.  Fidelity claims that the amount paid for title insurance as

9    reflected on Plaintiff's HUD-1 was an erroneous aggregation of fees, and that Plaintiff was

10   nevertheless charged the correct reissue rate.[4]  Even if Fidelity intends to pursue this defense

11   at trial, there is no evidence to suggest that it is unique to Plaintiff.  Fidelity is free to

12   challenge its own sworn title insurance rate on any HUD-1 for any class member.  Whether

13   or not Fidelity so argues does not change the basic premise uniting the class: each class

14   member was entitled to the reissue rate, and each customer was not charged that rate

15   according to its HUD-1.  Whatever reasons Fidelity may present as to why the HUD-1 is

16   incorrect, the Court is not convinced that an aggregation of fees argument will be unique to

17   Defendant.

18          **4.    Adequacy**

19                 **a.    Adequacy of Plaintiff**

20          Whether Plaintiff satisfies the adequacy requirement depends on "the qualifications

21   of counsel for the representatives, an absence of antagonism, a sharing of interests between

22   representatives and absentees, and the unlikelihood that the suit is collusive." *Crawford v.*

23   *Honig*, 37 F.3d 485, 487 (9th Cir. 1994) (quoting *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386,

24

25          [4] This argument formed the basis of Fidelity's previous Motion for Summary Judgment,
     which the Court denied.  Fidelity now cites to the Court's Order denying its Motion for
26   Summary Judgment, arguing that Plaintiff's claim is subject to unique defenses because this
     Court has already determined that a jury should consider the conflicting evidence related to how
27   Plaintiff's title insurance rate was calculated.  Fidelity errs by suggesting that the Court's holding
     – that, contrary to Fidelity's assertion, the evidence before the Court did not indisputably
28   establish that Plaintiff was charged the reissue rate – constitutes a finding that Plaintiff's claim is
     subject to unique defenses such that class certification is inappropriate.

8

390 (9th Cir. 1992)).  Fidelity contends that Plaintiff cannot adequately represent the class because he is uninformed and uninterested in the litigation.  In support of their argument, Fidelity cites to several cases refusing to certify a class in which the named representative was so unfamiliar with the case that he was not able to serve the necessary role of "check[ing] the otherwise unfettered discretion of counsel in prosecuting the suit." *Simon v. Ashworth, Inc.*, 2007 WL 4811932, *2 (C.D. Cal. 2007) (citing *Welling v. Axley*, 155 F.R.D. 654, 659 (N.D. Cal. 1994)).  However, numerous cases certifying class actions similar to the one at bar have rejected inadequate-representative arguments like the one advanced by Fidelity in this case.  *See Lewis*, 265 F.R.D. at 558 ("Defendant is asserting that because of Plaintiff ignorance, she would be unable to aid her attorneys, and the suit is, in reality, her lawyer's lawsuit ... A review of Plaintiff's deposition reveals that she has an adequate understanding of this litigation, the facts that gave rise to the underlying action and a clear idea of her expectations of resolution."); *Hamilton v. First American Title Ins. Co.*, 266 F.R.D. 153, 164 (N.D. Tex. 2010) ("First American does contend, however, that the named plaintiffs are inadequate class representatives because they lack a sufficient level of 'involvement in, control over, or understanding of this lawsuit.' . . . . Rule 23 does not judge the named plaintiffs' level of knowledge about the action against an exacting standard. . . . The named plaintiffs 'do need to know more than that they were involved in a bad business deal,' but they 'need not be legal scholars and are entitled to rely on counsel.' The named plaintiffs in this case may not be intimately familiar with the details of this litigation, but Rule 23 does not require them to be."); *In re Coordinated Title Ins. Cases*, 784 N.Y.S.2d 919, *13 (N.Y. Sup. 2004) ("The defense contends that [plaintiff] is an inadequate representative because she 'does not even have a basic handle on her own every day affairs' . . . a party 'will be deemed inadequate only if she is startlingly unfamiliar with the case' . . . That is not the case here and [plaintiff] may proceed as a class representative).  Moreover, as the *Lewis* court noted, "This issue has been addressed, and largely settled, by the Supreme Court." 265 F.R.D. at 558.  The United States Supreme Court has held:

> The basic purpose of the Federal Rules is to administer justice though fair trials, not through summary dismissals as necessary as they may be on occasion. These rules were designed in large part to get away from some of the old procedural booby traps, which common-law pleaders could set to prevent unsophisticated litigants from ever having their day in court. If rules of procedure work as they should in an honest and fair judicial system they not only permit, but should as nearly as possible guarantee that bona fide complaints be carried to an adjudication on the merits.

*Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 372-73 (1966).

The Court finds that Plaintiff's understanding of the pending litigation is sufficient and that Plaintiff is prepared to vigorously pursue this case to completion. In his deposition, Plaintiff testified that the lawsuit was based on an allegation that Plaintiff was overcharged for title insurance when he refinanced his house. Plaintiff became involved in the lawsuit when he responded to a solicitation letter from his counsel. Plaintiff had met with counsel in person and spoke to counsel regularly by telephone. Plaintiff had gathered paperwork for discovery. Plaintiff understood that the case might go to trial and stated he was prepared to participate in the trial. Plaintiff identified his motivation in filing the lawsuit, stating "When I do paperwork, I trust people that are doing it, you know, and then come to find out, you know, they're ripping you off, you know. You go to those kind of places with faith and then they overcharge you, I don't think it's right." Plaintiff also stated that he intended to pursue the lawsuit so that other people did not suffer the same loss that Plaintiff had suffered. He demonstrated a basic understanding of a class action lawsuit, stating "if we do win, everybody ... other people that were overcharged ... gets paid whatever they overpaid them" and that if Plaintiff lost the case, the entire class would be denied relief. Plaintiff's understanding and interest is distinguishable from that of plaintiffs in the cases cited by Fidelity. *See Simon*, 2007 WL 4811932 at *2 (rejecting class representative who did not understand his role as a class representative, took no interest in his case, had not reviewed any documents, had not spent even one hour on the case, was cavalier about signing documents under penalty of perjury, and did not expect to seek recovery for absent class members); *Pashek v. Arizona Bd. of Regents*, 82 F.R.D. 62, 63-64 (D. Ariz. 1979) (finding class representative inadequate because she submitted to the defendant a settlement proposal beneficial to herself and her attorney but not to unnamed plaintiffs to whom she owed a

10

1   fiduciary obligation, failed to move for class certification in a timely manner, was unaware

2   of the major events of the case and was out of state much of the time); *Monroe v. City of*

3   *Charlottesville*, 2007 WL 2461746, *3-4 (W.D. Va. 2007) (rejecting class representative who

4   did not recognize the complaint and did not know when it had been filed); *Bodner v. Oreck*

5   *Direct, LLC*, 2007 WL 1223777, *2-3 (N.D. Cal. 2007) (finding class representative

6   unsuitable because he did not review the complaint before it was filed and did not meet his

7   counsel until the day before his deposition; noting also that counsel had previously been

8   cautioned regarding its relationship to named plaintiffs). The Court concludes that Plaintiff

9   will adequately protect the interests of the class.

10                      **b.      Adequacy of Plaintiff's counsel**[5]

11          Fidelity contends that Plaintiff's counsel will not adequately represent the class

12   because (1) Plaintiff's counsel will not be vigorous in its representation, (2) Plaintiff's

13   counsel violated a protective order in a related case, and (3) three of the five attorneys

14   representing Plaintiff's counsel do not carry malpractice insurance.

15          First, the Court rejects Fidelity's assertion that Plaintiff's counsel will not be vigorous

16   in its representation of the class. Fidelity bases this argument on the fact that Plaintiff's

17   counsel was criticized in *Woodard* for "failure to do the due diligence necessary to provide

18   . . . evidentiary support for [plaintiff's] numerosity claim"; the Woodard court questioned

19   "whether Plaintiff and his counsel would expend the effort necessary to prosecute this action

20   vigorously on behalf of the class."  *Woodard v. Fidelity Nat. Title Ins. Co.*, 2008 WL

21   5737364, *8 (D. N.M. 2008).  For the reasons stated previously in this Order, this Court

22   respectfully disagrees with the evidentiary burden the *Woodard* court imposed on Plaintiff's

23   counsel with respect to the numerosity requirement.[6]

24

25          [5] The Court's obligation to ensure that class counsel will adequately represent the
     interests of the class is set forth in both Rule 23(a)(4) and Rule 23(g), Fed. R. Civ. P.
26

27          [6] In addition, it is unclear what evidence the plaintiff produced to demonstrate numerosity
     in *Woodard*.  Fidelity contends that plaintiff's counsel produced the same HUD-1s in *Woodard*
28   that they have produced in the present case.  The *Woodard* court, however, found that plaintiff's
     counsel had attempted to prove numerosity with nothing more than "unsubstantiated assertions
     and speculative beliefs" that "the class is comprised of thousands of individuals."  2008 WL

                                                          11

1    Second, the Court disagrees with Fidelity's claim that Plaintiff's counsel violated a

2    protective order in a related case.  According to Fidelity, the HUD-1s produced by Plaintiff's

3    counsel in this case were originally disclosed by Fidelity in *Woodard* and fall within the

4    ambit of a protective order issued in that case.  The protective order, however, was put in

5    place to protect Fidelity against "unnecessary disclosure of proprietary and confidential

6    information."  Fidelity's interest in safeguarding itself against unfair competitive advantage

7    has not been compromised; Plaintiff's counsel filed the HUD-1s at issue under seal in the

8    present case.

9        Third, although Plaintiff's counsel did not address Fidelity's contention that three of

10   the five attorneys representing Plaintiff do not carry malpractice insurance, the Court is not

11   inclined to find Plaintiffs' counsel inadequate on this ground.  Presumably, two of the five

12   attorneys representing Plaintiff do carry malpractice insurance.  In addition, malpractice

13   insurance is not a requirement of Rule 23(g), Fed. R. Civ. P.[7]  Finally, the Court notes that

14   Plaintiff's counsel has extensive class action litigation experience and is currently

15   representing a similar certified class in *Lewis*, 265 F.R.D. at 536.

16   **B.    Rule 23(b)(3) Requirements**

17          **1.    Predominance**

18       The Rule 23(b)(3) predominance inquiry tests whether proposed classes are

19   sufficiently cohesive to warrant adjudication by representation.  *See Hanlon,* 150 F.3d at

20   1022.  In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the

21   common and individual issues: when common questions present a significant aspect of the

22   case and they can be resolved for all members of the class in a single adjudication, there is

23   clear justification for handling the dispute on a representative rather than on an individual

24

25   5737364 at *8.

26       [7] The case cited by Fidelity in support of its contention that Plaintiff's counsel is
     inadequate for failure to carry malpractice insurance does not support that assertion.  In *In re*
27   *California Micro Devices Securities Litigation*, 1995 WL 476625 (N.D. Cal. 1995), the court
     questioned the adequacy of a particular law firm which had insufficient quality of performance
28   assurance, no malpractice insurance and had engaged in settlement discussions of class action
     litigation that "deprived the class the benefits of competition in the selection of class counsel and
     the determination of their compensation."

1    basis. *Id.*   The central task of the predominance inquiry is to consider how a trial on the

2    merits would be conducted if a class were certified. *Hamilton*, 266 F.R.D. at 153 (citing

3    *Sandwich Chef of Texas, Inc. v. Reliance National Indemnity Insurance Company*, 319 F.3d

4    205, 218 (5th Cir. 2003)).  This, in turn, entails identifying the substantive issues that will

5    control the outcome, assessing which issues will predominate, and then determining whether

6    the issues are common to the class, a process that ultimately prevents the class from

7    degenerating into a series of individual trials. *Id.* (citation omitted).

8            Fidelity presents four Rule 23(b)(3) challenges to Plaintiff's Motion for Class

9    Certification.  First, Fidelity contends that Plaintiff cannot show class-wide causation via

10   generalized proof.  According to Fidelity, Plaintiff's ACFA claim requires Plaintiff to

11   establish causation by identifying a company-wide, systemic error linking individual

12   consumers as a class.  However, in order to state a claim under ACFA, a plaintiff must show

13   (1) a false promise or misrepresentation made in connection with the sale or advertisement

14   of merchandise, and (2) consequent and proximate injury resulting from the promise. *Kuehn*

15   *v. Stanley*, 208 Ariz. 124, 129, 91 P.3d 346, 351 (2004) (citing *Correa v. Pecos Valley Dev.*

16   *Corp.*, 126 Ariz. 601, 605, 617 P.2d 767, 771 (1980)).  In the present case, Plaintiff can meet

17   his burden of proof by establishing that each class member was quoted an inflated rate for

18   title insurance (a misrepresentation of the correct rate) and overpaid Fidelity as a result

19   (injury resulting from the misrepresentation).   Liability affixes for any overcharge by

20   Fidelity, whatever the reason.  There is no requirement that each class member have been

21   deprived of the discount for the same reason.[8]  Because there is no intent element to a ACFA

22   claim, the issue can be framed as one common to the entire class: was the class member

23   overcharged for title insurance?  The variety of potential causes for the overcharge identified

24   by Fidelity – misunderstanding, miscalculation, erroneous aggregation of fees – are legally

25

26          [8] Indeed, it is worth noting that Plaintiff's Complaint alleges that Fidelity is engaged in a
     uniform and customary business practice of overcharging customers for title policies *by failing*
27   *to accord them discounted reissue rates and by failing to inform such customers that they qualify*
     *for such discounted rates*.  Thus Plaintiff's Complaint alleges that the violation of ACFA
28   resulted simply from Fidelity's routine omissions, not that Fidelity acted pursuant to an
     intentional scheme to defraud.

irrelevant at the class certification stage.[9]

Second, Fidelity contends that Plaintiff cannot demonstrate a class-wide means for showing injury. According to Fidelity, determining whether each class member was overcharged for title insurance will require individualized mini-trials for each class member. In support of this assertion, Fidelity catalogues a number of inquiries it contends could be relevant to determining whether a particular class member was overcharged: whether the class member refinanced before October, 2003 such that the remaining balance of the old loan was required to be at least 50% of the original principal amount; variance in application of Fidelity's internal policy of leniently applying the discount; the potential need to subpoena HUD-1s from separate escrow agents; review of the file to determine whether the lender or seller paid for the title premium, and review of the file to identify the final HUD-1.[10] However, this Court agrees with other district courts that have confronted similar fact scenarios and defenses: the process of determining overcharges is reducible to a straightforward, simple process. *See, e.g. Hamilton*, 266 F.R.D. at 161, n.6 (collecting cases). Plaintiff proposes that three documents are necessary to resolve questions of class membership, merits and damages: (1) the HUD-1, (2) the chain of title, and (3) the applicable rate manual. According to Plaintiff, either the HUD-1 or the chain of title will indicate

---

[9] Fidelity contends that its practice was to leniently apply the discount anytime it appeared that a customer was entitled to it and that this evidence disproves the existence of a class-wide cause. To the contrary, this argument goes to the merits of Plaintiff's claim and is not appropriate at the class certification stage. *See Hamilton v. First American Title Ins. Co.*, 266 F.R.D. 153, 163 (N.D. Tex. 2010) (stating that the question of whether the plaintiffs' evidence is sufficient is to be answered by a jury, and the time to answer it is at trial).

[10] Fidelity also cites to this Court's previous Order denying Fidelity's Motion to Dismiss as support for its assertion that identifying overcharges will require mini-trials that defeat predominance. (Doc. 63, pgs. 16-17.) Fidelity takes the Court's findings out of context. Fidelity moved to dismiss Plaintiff's action on the ground that Plaintiff was not overcharged for his title insurance premium. The Court denied the Motion, rejecting Fidelity's claim that the overcharge reflected on Plaintiff's HUD-1 could be explained as an erroneous aggregation of fees mistakenly listed as the title insurance fee on the HUD-1. In rejecting Fidelity's claim, the Court examined various documents produced by Fidelity in support of its claim that the actual fee charged could be determined from various other records in Plaintiff's closing file. The Court made no findings with respect to which of those documents would be necessary or admissible at trial in calculating Plaintiff's (or other class members) premiums. Fidelity errs by suggesting that the Court's previous Order constitutes binding authority that Plaintiff cannot rely on the HUD-1 as proof of the fee charged.

14

1   whether the refinancing homeowner's prior loan was issued by an institutional lender.  If so,

2   Plaintiff contends that it can be presumed that the homeowner had previous title insurance

3   and is therefore entitled to the reissue rate as part of the refinance.  The HUD-1 would

4   indicate the premium paid; that amount would be compared to the authorized rate set forth

5   in the manual.  If the actual premium in the HUD-1 exceeds the mandated price contained

6   in the manual, Plaintiff alleges that class membership, liability and exact damages are

7   established.

8        Thus Plaintiff proposes using proof of a prior loan from an institutionalized lender as

9   a proxy indicator that the homeowner was entitled to the reissue rate.[11]  Fidelity takes issue

10  with this, claiming that use of a proxy is not appropriate and that only individualized

11  evidence, such as the closing paperwork from a class member's previous mortgage, can prove

12  the existence of a prior lender's policy.  As the court held in *Hamilton*, however, "regardless

13  [of] which side is correct as to the answer to that question, the question itself is a common

14  question of fact. Because the question itself is capable of classwide determination, the dispute

15  over what determines R-8 eligibility does not itself weigh against class certification."  266

16  F.R.D. at 161.

17       Nor is the Court convinced by Fidelity's contention that the need to review each class

18  member's file individually precludes a finding of predominance.  "It is true that . . . to

19  establish that the class members paid too high a premium for their lender's policies [requires]

20  individual questions of fact. However, each of these questions can be answered with

21  information contained in documentary evidence. It is probable that each of these questions

22  will be answered as to all class members before a trial begins."  *Hamilton*, 266 F.R.D. at 166.

23  Under Plaintiff's theory, the individualized file review will be a "virtually automatic process

24  that looks only at whether the title search showed a prior mortgage or refinancing and

25  whether the customer received a discounted rate."  *Slapikas v. First American Title Ins. Co.*,

26  250 F.R.D. 232, 250 (W.D. Pa. 2008).  "Even if it takes a substantial amount of time to

27

28       [11] As noted in *Hamilton*, the class may need to be re-defined to provide the necessary precision by limiting the class to class members whose closing files contain a HUD-1 and a chain of title.

1    review files and determine who is eligible for the discount, that work can be done during

2    discovery. Plaintiffs can then identify the individuals who are eligible for the discounts and

3    did not receive them . . . .   In short, while this issue may involve a file-by-file review, it will

4    not require a file-by-file trial." *Perez*, 2009 WL 2486003 at *7.  The Court therefore rejects

5    Fidelity's contention that individual issues of liability and damages predominate in this case.

6         Third, Fidelity contends that individual issues of reliance will predominate Plaintiff's

7    claims.  According to Fidelity, Plaintiff's ACFA claim requires a showing of actual reliance,

8    which must be determined on an individualized basis.  Fidelity also contends that class

9    members cannot bring an unjust enrichment claim unless they are without an adequate

10   remedy at law; therefore whether each class member can satisfy the reliance element of an

11   ACFA claim necessarily determines whether the class member can bring claim for unjust

12   enrichment. While the Court agrees that ACFA requires proof of actual reliance, *see Stratton*

13   *v. American Medical Sec., Inc.*, 266 F.R.D. 340, 349 (D. Ariz. 2009), the Court disagrees

14   with Fidelity's assertion that actual reliance must be proven on an individual basis in this

15   case.  For purposes of this Motion, actual reliance can be presumed on a class-wide basis by

16   the fact of purchase: the class members, by definition, paid more than the reissue rate based

17   on Fidelity's representation of the appropriate fee.  Many courts to consider the issue have

18   reasoned that "questions of nondisclosure and reliance can be proven on a class-wide basis

19   through the implausibility that class members eligible for a discount would voluntarily

20   choose to pay a higher rate for the same policy."  *Slapikas*, 250 F.R.D. at 247 (collecting

21   cases); *see also In re Coordinated Title Ins.*, 784 N.Y.S.2d 919 at *6 (presuming actual

22   reliance on behalf of the class for purposes of class certification and noting the difficulty of

23   imagining a scenario where a consumer would agree to pay more for a product than the law

24   allows).  To the extent that Fidelity is able to present evidence supporting its claim that some

25   class members may have purposely overpaid for title insurance, Fidelity may present such

26   evidence at trial.  *See In re Coordinated Title Ins*, 784 N.Y.S. at *6 (collecting cases in

27   support of the court's holding that "if, in the review of files, defendants are able to show that

28   actual notice was sent to a particular consumer, this evidence may be interposed at a later

1   stage.")

2       Fourth, Fidelity contends that individual issues predominate the statute of limitations

3   inquiry.  Plaintiff's ACFA claim is governed by a one-year statute of limitations, *see Murry*

4   *v. Western Amer. Mortg. Co.*, 604 P.2d 651, 654 (Ariz. App. 1979); his unjust enrichment

5   claim is governed by a three-year statute of limitations. *See Frew v. Coit Services, Inc.*, 2007

6   WL 2903026 (D. Ariz. 2007).  Plaintiff's June 20, 2005 refinance falls outside both of these

7   limitations periods: his Complaint was filed on March 25, 2009.  Accordingly, Plaintiff must

8   rely on the discovery rule – which holds that a claim does not accrue until the plaintiff

9   knows, or in the exercise of reasonable diligence should know, the facts underlying the cause

10  – in order to pursue his claims against Fidelity.[12]  Fidelity contends that application of the

11  discovery rule cannot be decided class-wide, because each class member may have been

12  alerted to his/her claim at different times.   According to Fidelity, numerous sources

13  publicized the reissue rate: class members may have discovered, or should have discovered,

14  their claims based on these publications at various times.   The Court declines to deny

15  certification on this basis.  The Court notes that discovery has not yet been completed in this

16  case (indeed, discovery on the merits has not yet begun) and that Plaintiff may yet produce

17  evidence demonstrating that "the facts of their transaction and the level of their knowledge

18  arise from the same event or practice or course of conduct that gives rise to the claims of the

19  other class members."  *Perez*, 2010 WL 1507012 at *7.  Even if Plaintiff was not able to

20  produce such evidence, the class could be more narrowly defined to include only those class

21  members whose claims arose within the statutes of limitation and who therefore do not need

22  to invoke the discovery rule.[13]  *See id.*   At the close of discovery, the parties may file

23

24      [12] Plaintiff contends that he is entitled to equitable tolling of the statute of limitations
    during the pendency of the *Woodard* class action in the United States District Court for the
25  District of New Mexico.  The Ninth Circuit has held that it will not import the doctrine of cross-
    jurisdictional tolling into state law where the state has not expressly adopted such cross-
26  jurisdictional tolling.  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008).
    The Court is unaware of any Arizona case law suggesting that Arizona is such a state.
27

28      [13] The Court notes that if the class were redefined in this manner, Plaintiff would no
    longer be a member of the class and Plaintiff's counsel would need to request leave to substitute
    class representatives.

17

1   memoranda on the temporal scope of the class, at which point the question of whether the

2   class period should include any tolling periods properly may be decided.  *See id.*

3   **2.    Superiority**

4   Rule 23(b)(3), Fed. R. Civ. P. requires that a class action be superior to other methods

5   for the fair and efficient adjudication of the controversy.  In determining whether a class

6   action is superior, the court looks to four non-exclusive factors: (1) the class members'

7   interests in individually controlling the prosecution or defense of separate actions; (2) the

8   extent and nature of any litigation concerning the controversy already begun by or against

9   class members; (3) the desirability or undesirability of concentrating the litigation of the

10  claims in the particular forum; and (4) the likely difficulties in managing a class action.  *See*

11  Rule 23(b)(3)(A-D), Fed. R. Civ. P.

12  The parties do not dispute that the first three factors listed in Rule 23(b)(3) weigh in

13  favor of certification.  First, the individual damage amounts at issue – an average of $418.46

14  per class member, based on evidence presented by Plaintiff – are not particularly sizable.  No

15  single homeowner has a strong interest in pursuing claims independent of a class action;

16  "small recoveries do not provide the incentive for any individual to bring a solo action

17  prosecuting his or her rights." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997)

18  (citing *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (1997)).  Second, Plaintiff has also

19  avowed to the Court that he is not aware of any individual proceeding commenced by any

20  litigant against Defendant which would affect the case at bar.  Third, concentrating the

21  litigation of the claims in this District would serve the interests of judicial economy and party

22  resources; in addition the suit concerns title insurance policies that were issued in Arizona

23  and no other alternative forum readily presents itself as more desirable than this one.

24  Fidelity argues that the fourth factor weighs strongly against certification of the class.

25  According to Fidelity, class certification would unduly burden Fidelity with review of

26  hundreds of thousands of transactions to identify overcharges.  However, other courts that

27  have certified class actions alleging overcharges by title insurers have not been persuaded

28  by this purported lack of manageability. *Slapikas*, 250 F.R.D. 232 at 250 (collecting cases).

18

1    In addition, even if management of the class action presents some difficulties for Fidelity,

2    this fourth factor is outweighed by the other three factors, which support a finding of

3    superiority.

4         Fidelity also argues in favor of two alternatives to class litigation: pursuit of

5    administrative procedures and Fidelity's own refund policy.  Fidelity points of that the

6    Arizona Department of Insurance offers a "Request for Assistance Form" on its website

7    which allows consumers to request the ADOI's assistance related to "Premium Rates."

8    However, Fidelity has not presented any evidence demonstrating that ADOI has assisted

9    consumers with refunds of title insurance overcharges.  A press release published by ADOI

10   states that the majority of complaints responded to by ADOI involve "a delay or denial in

11   paying automobile, health or homeowners insurance claims."   The press release also

12   specifically states that ADOI "cannot adjudicate claims [but] can provide information and

13   assistance on claim issues."   In addition, although ADOI has statutory authority to impose

14   civil penalties against title insurers who deviate from allowable rates, the penalty is capped

15   at $15,000 per year per title insurer.  See A.R.S. § 20-379(D).  Thus, to the extent ADOI

16   offers an administrative procedure to address title insurance overcharges, the Court disagrees

17   with Fidelity's assertion that the procedure is superior to class litigation.

18        Likewise, Fidelity's own alleged policy of "willingly refund[ing] overcharges" is not

19   a superior method of resolving this dispute.  Although in some instances courts may find a

20   lack of superiority where reimbursement is available through a refund or recall program, *see,*

21   *e.g., In re Phenylpropanolamine (PPA) Products Liability Litigation*, 214 F.R.D. 614, 622

22   (W.D. Wash. 2003), the refund/recall program generally provides public notice and has a

23   proven rate of success.  *See id.* (noting that recall was prompted by widely publicized FDA

24   advisory and product withdrawal and that evidence demonstrated that $119,808 in refunds

25   had been distributed to 14,000 consumers).  In the present case, Fidelity has not produced

26   evidence of a clearly-established refund policy that is directly communicated to consumers.

27   Nor has Fidelity presented evidence of refunds having been issued.  Accordingly, the Court

28   finds that the pending litigation is superior to Fidelity's own refund policy for fairly and

19

1 | efficiently adjudicating the reissue rate controversy.

2 | **CONCLUSION**

3 | For the foregoing reasons, IT IS ORDERED that Plaintiff's Motion for Class

4 | Certification filed May 14, 2010 (Doc. 53) is GRANTED.

5 | Pursuant to the Scheduling Order issued in this matter on July 15, 2009, the parties

6 | shall file, within thirty days, a joint report with the Court proposing a discovery schedule for

7 | discovery on the merits.

8 | DATED this 31st day of March, 2011.

Jennifer C. Guerin
United States Magistrate Judge

20